Before we begin, there was a motion to add authority filed by the people. The motion will be granted, but we will allow you to, Mr. Fisher, have 14 days to respond. Would that be fine? Okay. Okay. Very good. Okay. You may proceed now, Mr. Fisher. Good afternoon, Your Honors. May it please the Court, Counsel. I'm representing the defendant in this case, Richard Bauer. Mr. Bauer pled guilty in Grundy County to a charge of retail theft. He was sentenced to a term of two years and nine months' imprisonment to run consecutively to a sentence imposed for an unrelated conviction in Will County. He subsequently filed a nook-pro-tunk motion seeking credit against the Grundy County sentence in addition to the amount of credit that was specified in the written sentencing order. The judge denied that nook-pro-tunk motion. This appeal is from the order denying the motion, and two issues are raised on appeal. The first issue, the defendant maintains that he is entitled to that additional credit. He therefore asks Your Honors to order amendment of the sentencing order in middle of this to show that he should receive credit against his Grundy County sentence for all the time he spent in the Grundy County jail. Issue two is divided into two arguments. The first argument is based on the fact that Mr. Bauer pled guilty to a class four felony retail theft, but the sentencing order shows a conviction of class three felony retail theft. He therefore asks this court to order amendment of the sentencing order in middle of this to show a class four felony, not a class three felony. In the second part of issue two, he asks Your Honors to order amendment of the sentencing order to either vacate or to show satisfaction of the requirements in that order that he submit a DNA sample and pay a $200 DNA analysis fee because he's already been ordered to do those things in another case. Now the state on appeal acknowledges that the defendant pled guilty to a class four felony, and therefore the sentencing order should be amended to reflect that. The state disputes, however, both the DNA issue and the credit issue, and therefore I'd like to address both of those issues this afternoon. Typically, I would not orally argue a credit issue because for the most part, those are fairly clear and straightforward based on the record on appeal. I would submit to Your Honors that if you take a close look at this record, you'll agree with the defendant that he is entitled to the additional credit. But it's apparent that there's been some confusion here as typified by the judge's comments when he denied the lynch probe's own commotion, saying that the defendant was serving consecutive sentences, suggesting that what the defendant was doing here was seeking double credit against each of the consecutive sentences. In other words, credit against the Grundy sentence that he was already receiving against the Will County sentence, and that's basically the argument that the state makes on appeal as well. The trial judge didn't know at the time that he hadn't been given credit for that chunk of time, right? He was not aware of it. We seem to be aware of it now because we've looked on the website. I mean, I would say we, I mean you. But the trial judge didn't know that, did he? That's possible. The defendant, of course, here is relying both on the Department of Corrections website, also on the Grundy County sentencing order, also on the Will County sentencing order. It is possible that the trial judge did not know all of that. However, he did clearly make an assumption as to what the defendant was requesting. He did make the assumption, which was incorrect. Yes, yes. And that's your whole basis of your argument. Position on appeal. That's correct, Your Honor. That's correct. The record on appeal shows that the defendant was arrested in Will County, charged with a Will County offense in August of 2007. Was released from the Will County jail 11 days later after posting bond. Two months after that, October 16, 2007, he was arrested in Grundy County on the Grundy County charge that forms the basis for this appeal. And he remained in the Grundy County jail until being transported to the Department of Corrections on May 9, 2008. Now, as mentioned, the circuit judge who denied the Munk Pro Tunk motion did so apparently assuming that the defendant was receiving credit for some of that time in the Grundy County jail against the Will County sentence. And actually, I apologize. I misspoke. Speaking here now of the judge who imposed the Grundy County sentence. Judge who imposed the Grundy County sentence correctly noted in his sentencing that the defendant was sentenced in Will County on February 25, 2008. And he therefore made an assumption that the defendant would receive credit against the Will sentence from that date forward, February 25, 2008. He therefore specified in the sentencing order that the defendant received credit against the Grundy County sentence only from October 16, 2007 through February 25, 2008. Now, the fact of the matter is that probably was not a bad assumption on his part, but it didn't prove to be correct. Because it's apparent from looking at the DOC website, which is appended to the brief found by the defendant here, that what the Department of Corrections did in determining what credit the defendant was getting was simply to look at the two sentencing orders, the Will County sentencing order and the Grundy County sentencing order, and to see how much credit was specified in each of those orders. Your honors are probably aware that when an individual arrives in the Department of Corrections, the Department of Corrections will look to see how much time that individual has spent in the county jail. And if the individual has time in the county jail, it will backdate his custody date. By that I mean, for example, if an individual arrives in the Department of Corrections and the DOC sees that he's spent 30 days in the county jail, it will treat the defendant's sentence as if he actually began serving it 30 days before coming into prison. So what the DOC did here, apparently, was look to the Grundy County sentencing order, saw that it gave him credit from October 16, 2007 to February 25, 2008, and it counted up those number of days. It looked at the Will County sentencing order and saw that it specified 11 days credit in August of 2007, counted up those days, and then backdated that sum from the date he came into prison, February 9, 2008, and arrived at a date in December of 2007, therefore treating his sentences as if they began in December. The problem is, as I previously mentioned, the defendant was in the Grundy County jail from October 16 on, plus he had 11 days in Will County, so his sentence should have really started in October of 2007. The disparity clearly is due to the trial judge's thinking that the defendant would receive credit against the Will County sentence from February 25 onward, but that just is not the way it has worked out. Therefore, the defendant is not seeking double credit. What he's simply seeking is credit that he's not receiving currently against either of his sentences or any other sentence. And for those reasons, he respectfully asks your honors to order amendment of the minimus to show that he's entitled to credit against the Grundy County sentence for all of the time spent in the Grundy County jail from October 16, 2007, through May 8, 2008. Now, regarding the DNA issue, your honors are well aware that for several years now in Illinois, it has been the law that if an individual is convicted of a felony offense, he must submit a tissue sample or a blood or saliva sample and pay a $200 fee to have that sample analyzed to determine his DNA. His DNA is then placed into a statewide database controlled by the state police, and obviously this has been an investigative tool for law enforcement in Illinois, helping to solve future crimes and even older unsolved crimes where DNA evidence is found at the scene. Now, because Mr. Bauer pled guilty to a felony in Will County, he would seem to fall under this particular statute. And therefore, the prosecutor at sentencing noted that he had placed into his draft of the written sentencing order the requirements that the defendant submit the sample and pay the fee. But the prosecutor went on to note that the defendant had likely already done these things in conjunction with one of his prior convictions, such as the Will County conviction. And therefore, if that was the case, he shouldn't have to do so again. The trial judge agreed with the prosecutor's reasoning, said, well, we'll include these requirements in the sentencing order, but we'll make a notation that they've likely already been fulfilled. The problem is there is no notation or qualifying language at all in the sentencing order. Guernsey County's sentencing order simply contains the directions that the defendant submit the DNA sample and pay the fee. As it turns out, the record from Will County shows that when he was convicted in Will County, he was ordered to submit the DNA sample and pay the fee in conjunction with that case. And the defendant submits that once an individual submits a DNA sample, there is no purpose to be served by submitting a second sample. And therefore, these requirements in the Guernsey County sentence either should be vacated or language should be added into that sentencing order showing that these requirements have already been fulfilled. The statute doesn't have any of those exceptions. The statute does not specifically contain the exception. That is one argument made by the state. I would submit, Your Honors, that it is very possibly due to oversight by the legislature. Possibly the legislature has felt that that went without saying, that once it's done, there's no need to do it again. The defendant has cited People v. Evangelista, the decision of the Second District of Public Court, which is the only published decision that I have found addressing this issue. They really don't address it in that case. They just pronounce something. Well, I would say they addressed it. It was raised on appeal and they did address the issue. In that case, the appellate prosecutor conceded the issue and the appellate court went on to agree with the appellate prosecutor's concession and agree with the argument made by the defense that based on the purpose of the statute, that once the sample was submitted, there was no need to do so again. Therefore, in Evangelista's case, obviously he had had a prior conviction, had previously submitted a sample, and therefore they ordered that it be vacated in that particular case. The state argues Evangelista cites no authority. But, of course, if it was an issue of first impression, there was really no authority to cite other than the decision in, other than the statute. Again, they looked at the statute. They looked at the purpose of the statute. The state makes another argument based on the DNA statute, which is kind of interesting, but I don't think it really holds water. That argument is based on a provision in the DNA statute which states that an individual's DNA sample shall be removed from the database if his conviction is overturned based on actual innocence or if he receives a complete and full pardon from the governor. Counsel, you have two minutes. Thank you. Now, obviously we're dealing with a very small number of cases here where an individual's conviction is overturned based on actual innocence or he receives a pardon from the governor. Given the resources available to the state police, the defendants admit it would not be an undue burden on the state police if they were notified that a conviction has been overturned to determine whether the individual has a subsequent qualifying conviction that would require them to leave the DNA in the database. So the defendant, excuse me, submits that that argument should not persuade this court either. In short, there's no purpose to be served because of the scientific fact that our DNA does not change over the course of our lifetimes. Our DNA is the same on the day we die as it is on the day we're born. We assume it, right? Excuse me, Harry? We assume that. We assume that from what I know. Therefore, if it's in there once, it merely places a greater burden on the people who must test these samples and maintain the database to do it all over again. I would also note for what it's worth that the argument made by the state on appeal, as I think I've already alluded to, is the exact opposite of the position taken by the state in the trial court, let alone the exact opposite of the position taken by the trial judge and by the appellate prosecutor in Evangelista. Because the state is arguing the opposite on appeal of what the trial prosecutor basically conceded in the trial court, it has a waiver problem and an estoppel problem. In the end, of course, it's important to get it right. The defendant submits the trial prosecutor got it right, the trial judge got it right, the appellate court and appellate prosecutor in Evangelista got it right, the state on appeal has it wrong, there's no purpose to be served, and therefore asks Your Honors to vacate. Thank you, Mr. Fisher. Ms. Duffy, you may respond. Thank you, Your Honors. Mr. Fisher, very briefly, I basically stand on my brief on the issue of credit. The statute's clear that when you're sentenced to consecutive sentences, good time credit is accrued as if this is an aggregate term. This defendant... He didn't get the credit for the other case either. That's 74 days or whatever, did he? He got 12. I mean, from... But you see, what Mr. Fisher is arguing is not the judge's error. The judge was correct. He's arguing with the way the Department of Corrections has computed things. I guess if he is not credited on one case or the other for that 74 days, if he's not credited for that anywhere... Yes, he is. When he was sentenced... Okay. When he was sentenced in Will County on February 25th of 2008, he was placed in the custody of the Department of Corrections, who then computes his time serving in the Department of Corrections from that date forward. And so when he was sentenced in Greene County on May 9th, he was receiving credit from the Department of Corrections because he was serving a sentence there from February 25th through May 9th. What about the period from October of the year before? The trial judge gave him credit from October 16th to February 25th for time spent in Grundy County Jail. Will County gave him credit for 12 days in August, August to September on that case. And he went back to Grundy County for this trial. And he stayed there for... Went back to... Several, a couple months, three months, whatever. Correct. And he wasn't given credit for that. He was given credit because he was... And he's in jail for, in two different jails, three different times, right? Yes, but he's only serving one sentence. In Grundy, he's in Will. But he's only serving one sentence. He's in Grundy. Yes. Okay. So, in the total, do you dispute the facts found on the Internet by the defendant and make sure you look at those? I don't know. I mean, I don't know how the Department of Corrections actually keeps its records, why it put the dates in there. Let's assume he's correct. It's calculated, all right? And that they did not calculate this last couple of months. He has time that he's not credited for in one case or another in his consecutive sentences. Am I wrong? I mean, I don't... And why would you not give him that credit? Why would you say he's not... If he deserves... Assuming that it's true, that the website says that he only has so many days of credit, but he's been in jail for one or both of these for a longer period of time. Should he be denied that credit? No. I mean, assuming it's true. Assuming it's true, but he was in the Grundy County Jail on October 16th of 2007, okay? They transported him from the Grundy County Jail to the Will County Jail in December to face the Will County case. Right. For which he was sentenced on February 25th of 2008. Okay. So he is in constant custody of one county or the other, okay? All right. What happens after the Will County trial? After he's sentenced on February 25th of 2008, he's placed in the custody of the Department of Corrections. Then you go to the Will County. Doesn't he go to Grundy County at that point? Yes. For this trial? Yes. But the case law says that when you're in the custody of the Department of Corrections, that's not pre-sentence custody. So for purposes of the Department of Corrections, he's in the custody of the Department of Corrections as of February 25th when they pick up the calculations for the credit he's supposed to get. Do you see what I'm saying? I see what you're saying. Okay. And the statute says that you treat these consecutive sentences as an aggregate term of seven years and you get this credit for days spent in custody only once. So if the Department of Corrections is giving you credit from February 25th through May 9th, towards the Will County case, why should he get credit from Grundy County, double credit, for the same period of time? That's what I'm saying. My understanding was from the report on the Internet was that he did not get that credit for that last couple of months. You're saying he did. He got it as a resident of the Department of Corrections. Yes. As to the issue on the DNA, I know Mr. Fisher thinks I'm out on an island all by myself, but I would point out that the Second District Appellate Court, the parties in the case, and Mr. Fisher have neglected to look at the authority on this issue, and that's the statute itself. The statute says, any person convicted of or found guilty of any offense classified as a felony under Illinois law shall, regardless of the sentence, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for purposes of putting his DNA in the data bank. Any person, it doesn't say any person except repeat offenders or except recidivists, and nowhere in this statute does it say that you only have to do this one time. It clearly says any person convicted of shall. As a consequence of that, any person required to submit the samples shall pay the analysis fee of $200. Now, whether or not we think that's logical, Mr. Fisher thinks it's logical, is irrelevant to what the statute actually says. The purpose of the statute is the creation of this criminal DNA database, and it has several goals, one of which is a tool, used as a tool, in determining whether or not someone might be a suspect in another case, solving cold cases, or, equally important, says our Supreme Court, excluding a potential suspect from consideration. That's found in Garvin, that's cited in our brief. Now, how the 2nd District came to this conclusion is somewhat astounding. Why? I don't know why the appellate prosecutor's office in the 2nd District confessed error on this. There's no body of law that tells you to confess error. The 2nd District didn't look at the statute. If you decide that you're going to follow Evangelista merely because it says, we don't think it's logical that you should have to do it two times, then you just add another brick to a building that's on very shaky foundation. That's not the way we handle statutes. We have to look at the plain language of the statute. Now, the defendant wants this court also to assume, I guess, that his DNA's already in the database. Even if there were a provision, and there isn't, that if your DNA is already in the database, you don't have to submit another sample, when do you prove that that's the case? Merely because someone's ordered to do that doesn't mean that the procedures have been followed, that the samples have been tested, the results are in the database. He provides no evidence that he was, you know, other than Will County, ordered to do that before, which is a time somewhat simultaneous with this. And that, in and of itself, the court ordered, still does not prove that his DNA is in the database. So would a remand satisfy that? Pardon me? Would a remand for another inter-hearing to see whether it's been done? No. The statute clearly doesn't accept him from submitting specimens and paying the analysis fee. We cannot read into the statute exceptions. Who is really paying for this analysis? I mean, if he's convicted of six felonies, and thereby into the state for $1,200, how many times, and what is he, he's got robbery, isn't he? No, he's pretty much a professional thief. He's obviously not very good at it. I guess it is. Okay. You know what, that may be a consequence, but nevertheless. I'm not saying it's illegal. Huh? I'm not saying it's illegal. Right. That may be a consequence, perhaps an unintended consequence by what the legislature did. But nevertheless, this is what they say. And we have to look at the plain language of the statute. If you're going to find conditions or exceptions, they have to be expressed in the statute. You can't assume them. You can't circumvent them. That's not up to us. I have one last thing, this motion to add authority that I filed. When I was preparing for this argument yesterday, I noted the statute was yellow flagged, and so I checked it. This is not a statute. It's really not authority in this case, because there is no enactment of this into law as of this date. I'm wondering if you should be allowed to argue this without response. Yes. There's no response. We've allowed them to respond. We've allowed your motion to add the authority. Okay. It just illustrates some things that you may want to take into consideration. But I just want you to know why I filed it and the fact that I do understand that this is not authority and it really doesn't apply to the circumstances in this case, because that's not the statutes that we're dealing with here. I guess the only thing I'm going to ask. Well, perhaps we shouldn't have granted the motion. Well, I didn't really know what to call it. I came upon it, and I thought perhaps I should bring it to your attention. Okay. Well, in other words, I think Mr. Fisher is more incapable of responding to whether he's right. Yes, I'm sure he is. And I'm quite sure he won't agree with my perception of it either. But I really don't have anything else to say other than I do understand that I'm asking you not to follow another district of the appellate court's decision. But that decision is so obviously based upon absolutely nothing but what they think the statute should say. It is certainly not based upon what the statute does say. And if you don't have any other questions. I don't believe we do. Okay. Thank you.  Thank you, Your Honor. With respect to the credit issue, the state asserts that from the time defendant was sentenced in Will County in February of 08, that he was thereafter in the custody of the Department of Corrections, and therefore he was receiving credit against the Will County sentence. Clearly, that was the assumption that was drawn by the Grundy County sentencing judge. And the reason that the Grundy County sentencing judge limited the credit in Grundy to the period from October 16, 2007 to February 25, 2008. It's apparent, though, that he was not in the custody of the Department of Corrections from February 25 onward. First of all, the hearings, the few hearings showing the record, I think, in Grundy County from that date to the date he was sentenced in Grundy, I think indicate that he was in court in custody of Grundy County. But I think the bottom line is he's not getting credit for that time because the Department of Corrections isn't giving him credit for that time. Department of Corrections simply looked at the amount of credit listed in the Will County sentencing order, which was 11 or 12 days, the amount of credit listed in the Grundy County sentencing order. And as a result, he's getting no credit against either sentence between February 25 and May 8. If he were, the DOC would treat his sentences as beginning in October of 07, and yet they're treating them as beginning in December of 2007. Clearly, the disparity is due to that block of time between February 25 and May 8. So he's clearly entitled to receive that credit. With respect to the second issue, State argues well as to the statute what may be logical is not relevant. I'm paraphrasing here, but State seems to say what I think may be logical, what she thinks may be logical, what this court may think logical. With respect to what the language in the DNA statute, it's irrelevant. You just look at what the legislature said in that statute. Can I ask a question with regard to the outdated pro date? You're talking about the – you attached to your brief the DOC records. Yes, Your Honor. Right? And you referred to that with State judicial notice of them. Yes, Your Honor. The DOC records. And there they show the projected pro date, 3-17-2011. That's what you say it should be earlier than that, right? Both that and the custody date. Now, you'll see a couple different custody dates, which can sometimes make things a little bit confusing. But the first custody date is actually the day the individual comes into the Department of Corrections, in this case, May 9, 2008. Then under each conviction with each separate sentence, it shows a custody date. And that custody date is the date that the DOC treats the sentence as beginning. And so if you look at those custody dates for the Grundy County and the Will County, you'll see those are in December of 2007. And that's what I'm referring to there. Well, you attached to your brief one that, for example, says suggested projected pro date, 3-17-2011. Right. Are you aware that the newer site – I mean, the site now shows the projected pro date at 12-17, it's 2010. I haven't looked at that, but I think I can. I mean, now there's a new date that goes back. I think I can probably explain that to you, Your Honor. It goes back about three months. Okay, and I think I haven't seen that, but I think I can explain that. It gives you a little bit of experience with the type of thing. This is a so-called 50% case. Both of these are so-called 50% as opposed to 85%, 100%. So assuming he follows the rules and regulations of the Department of Corrections while he's there, he can complete a sentence in half the time. In addition, assuming the defendant is on good behavior, given these particular offenses, the Department of Corrections has the discretion to give him an additional six months good time. Now, what the DOC sometimes does will at first give the individual three months, and then as he gets closer to his out date, assuming he's still on good behavior, we'll give him the full six months good time, and I think that's what's happened here. If you add the two sentences of Grundy and Will, you come up with seven years. Half of that would be three and a half. I'm sorry? I don't know if I have permission to go through. But half of that would be three and a half. So if you chart back from December of 07, three and a half, if you then take away that additional six months good time, that gets you to December of, I guess it would be 11 or whatever the date is. And so I don't think it's because they've recalculated because all of a sudden they've realized, oh, he's got this other credit here that he's not receiving. It's really, I think, because it's a good time. Under your position, the custody date for the Grundy County date should start when? In October, in October of 2007. Of the Grundy County case? Yes, yes, Your Honor. And the Will County case? Well, it gets a little bit confusing. The DOC really with consecutive sentences lumps them together in one big sentence. Otherwise they have a situation where you complete one consecutive sentence of parole, but then you start again, and so it's one seven-year sentence, and that entire seven-year sentence should really begin in October of 2007, given the dates there. And the last thing, if I have permission to say, Your Honors, is that the state seems to say the logic isn't a part of how we should interpret the statute, and yet the off-courted principle of statutory interpretation is that you interpret a statute so as not to lead to an absurd result. That's something the courts do. I think it would be an absurd result if you required an individual to submit a DNA sample where there can be no purpose to it, and I think that's what the court said in Evangelista, so I don't think we needed pages and pages of analysis in Evangelista. I think one short paragraph was sufficient to decide the issue, and therefore I think that case was correctly decided, and the defendant would ask Your Honors to agree with the court there and simply with principles of logic and common sense. Very good. Thank you. Thank you, Your Honors. Thank you, counsel, for your arguments in this matter this afternoon. It will be taken under advisement. A written disposition shall issue, and the court will stand in brief recess for a panel change.